**Randy HAIGHT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 1998–SC–0931–MR.**

Supreme Court of Kentucky.

April 26, 2001.

Daniel T. Goyette, Jefferson District Public Defender, Bruce P. Hackett, Deputy Appellate Defender, Jefferson District Public Defender, Louisville, Counsel for Appellant.

A.B. Chandler III, Attorney General, Susan Roncarti, Assistant Attorney General, Kent T. Young, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal seeks post-conviction relief from an order denying Haight a hearing

on his RCr 11.42 motion, denying him an opportunity to amend or supplement his motion, denying a request for discovery, denying him funds for experts, as well as denying the motion itself.

Haight has been the subject of three published Opinions of this Court. His first conviction was reversed by a majority of this Court in *Haight v. Commonwealth*, Ky., 760 S.W.2d 84 (1988). Subsequently, Haight sought a ruling that would require the Commonwealth not to seek the death penalty upon retrial. This Court resolved that issue against him in *Haight v. Williamson*, Ky., 833 S.W.2d 821 (1992). After the case was removed from Garrard County to Jefferson County and a special judge appointed, Haight was again convicted of two intentional murders and sentenced to death. He was also sentenced to two concurrent terms of twenty years in prison for two counts of first degree robbery and five years imprisonment for possession of a handgun by a convicted felon. The conviction and sentences were affirmed in *Haight v. Commonwealth*, Ky., 938 S.W.2d 243 (1996).

In this RCr 11.42 appeal, Haight raises twelve issues and identifies as one of the more significant issues, the question of whether he was entitled to an evidentiary hearing on his motion. The essential facts are that after having escaped from a county jail, and in the course of committing first-degree robbery, Haight killed two victims in a parked car by inflicting multiple gunshot wounds upon them. Haight admitted at trial that he killed the two people and moved their car to enable him to continue his flight. This Court has reviewed each of the twelve arguments presented on appeal.

We believe it is valuable to again set out the standard of review of claims raised in a collateral attack under RCr 11.42, alleging ineffective assistance of counsel at the original trial. Such a motion is limited to the issues that were not and could not be raised on direct appeal. An issue raised and rejected on direct appeal may not be relitigated in these proceedings by simply claiming that it amounts to ineffective assistance of counsel. *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905 (1998); *Brown v. Commonwealth*, Ky., 788 S.W.2d 500 (1990) and *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742 (1993).

The standards which measure ineffective assistance of counsel are set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985); *Sanborn, supra*. In order to be ineffective, performance of counsel must be below the objective standard of reasonableness and so prejudicial as to deprive a defendant of a fair trial and a reasonable result. *Strickland, supra*. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992). The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. *Morrow, supra*. The purpose of RCr 11.42 is to provide a forum for known grievances, not to provide an opportunity to research for grievances. *Gilliam v. Commonwealth*, Ky., 652 S.W.2d 856, 858 (1983).

In considering ineffective assistance, the reviewing court must focus on the totality of evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that

counsel rendered reasonable professional assistance. *See Morrow; Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■■■ A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance. *McQueen v. Commonwealth,* Ky., 949 S.W.2d 70 (1997). *Strickland* notes that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The right to effective assistance of counsel is recognized because of the effect it has on the ability of the accused to receive a fair trial.

■■■ In a RCr 11.42 proceeding, the movant has the burden to establish convincingly that he was deprived of some substantial right which would justify the extraordinary relief afforded by the post-conviction proceeding. *Dorton v. Commonwealth,* Ky., 433 S.W.2d 117, 118 (1968). Even when the trial judge does conduct an evidentiary hearing, a reviewing court must defer to the determination of the facts and witness credibility made by the trial judge. *Sanborn; McQueen v. Commonwealth,* Ky., 721 S.W.2d 694 (1986); *McQueen v. Scroggy,* 99 F.3d 1302 (6th Cir.1996).

## I. Lack of Evidentiary Hearing

Haight filed a 55–page motion to vacate the judgment pursuant to RCr 11.42 on October 14, 1997. The Commonwealth responded to each claim and indicated that there were no grounds which would warrant an evidentiary hearing. In any event, on March 16, 1998, a hearing was held to consider issues such as the discovery motion and the motion to amend. On September 9, 1998, the trial judge entered an order denying the RCr 11.42 motion and the discovery motion and also declined to

have any ex parte hearing for expert funding. During this process, the trial judge entered an order stating that the March 16th hearing was for the purpose of determining whether the matters in the RCr 11.42 motion required a hearing. The trial judge asked counsel during the March 16th hearing, what claims he planned to submit in an amendment and defense counsel indicated that he could not state with specificity what those issues would be.

■■■ An evidentiary hearing is not required to consider issues already refuted by the record in the trial court. Conclusionary allegations which are not supported by specific facts do not justify an evidentiary hearing because RCr 11.42 does not require a hearing to serve the function of discovery. *Sanborn, citing Stanford v. Commonwealth,* Ky., 854 S.W.2d 742 (1993); *Stanford, citing Skaggs v. Commonwealth,* Ky., 803 S.W.2d 573 (1990), stands for the proposition that even in a capital case, a RCr 11.42 motion is not automatically entitled to receive an evidentiary hearing. *Sanborn* states in pertinent part, "An evidentiary hearing is not required about issues refuted by the record of the trial court ...." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), supported the conclusion that an evidentiary hearing is not always required in an ineffective assistance of counsel claim.

■■■ Haight was not entitled to a hearing on the motion, and he was not denied a full and fair opportunity to present his claim. As stated in *Bowling v. Commonwealth,* Ky., 981 S.W.2d 545 (1998), *citing Stanford,* "If the record refutes the claims of errors, there is no need for an evidentiary hearing."

Many of the claims of Haight have already been raised and disposed of on direct appeal and are not to be heard now

under the ruse of ineffective assistance of counsel. Some of the allegations are based on speculation or are not pled with the degree of particularity required by RCr 11.42(2). Haight failed to prove prejudice on any of the claims. He received a fair trial and is not entitled to an evidentiary hearing. He had a complete opportunity to present all of his claims which he did in a lengthy and detailed RCr 11.42 motion accompanied by a hundred pages of exhibits. An examination of these documents indicates that the trial judge was correct in determining that no valid claims were presented. The trial judge was also correct when he determined that the sentence was not constitutionally invalid for lack of due process, for ineffective assistance of counsel or for any other reason ascertainable by the trial court.

There is no indication that Haight was denied due process under either the federal or state constitution. His motion raised numerous factual issues about defense counsel's failure to properly investigate, present relevant and important evidence, refusal to carry out the wishes of the defendant, failure to seek remedies for prejudicial occurrences at trial and failure to raise and preserve errors during and after trial. None of his arguments are persuasive.

 The post-conviction relief afforded by this rule is not a substitute for appeal and does not permit review of alleged trial errors which fall short of a denial of due process. *Smith v. Commonwealth*, Ky., 412 S.W.2d 256 (1967). Clearly, the trial judge was able to resolve the issues from the face of the record or determine that the allegations, even if true, were not sufficient to invalidate the convictions. *Wilson v. Commonwealth*, Ky., 975 S.W.2d 901 (1998). It should be remembered that the special judge who presided over the RCr 11.42 proceedings was the same judge who presided over the trial.

As noted in *Sanborn*, the collateral attack authorized by RCr 11.42, is limited to issues that were not and could not be raised on direct appeal. Any issue raised and rejected on direct appeal may not be relitigated in such proceedings by claiming that they amount to ineffective assistance of counsel. *Brown v. Commonwealth*, Ky., 788 S.W.2d 500 (1990); *Stanford*.

 An evidentiary hearing is not required about issues refuted by the record of the trial. *Stanford*. Conclusionary allegations which are not supported by particular facts do not justify an evidentiary hearing because RCr 11.42 does not require a hearing to serve the function of a discovery deposition.

## II. Peremptory Challenges

 The trial judge allowed Haight to exercise the full number of peremptory challenges pursuant to RCr 9.40. Haight argues that the right to exercise peremptory challenges has been deemed to be a substantial right and cites *Thomas v. Commonwealth*, Ky., 864 S.W.2d 252 (1993) or a substantive right citing *Bowling Green Municipal Utilities v. Atmos Energy Corp.*, Ky., 989 S.W.2d 577 (1999). He claims that it was his defense counsel who prevented him from freely exercising his peremptory challenges.

 An analysis of the authorities cited by Haight indicates that *Thomas, supra*, stated that "The rules specifying the number of peremptory challenges are not mere technicalities, they are substantial rights and are to be fully enforced." Here, Haight received the full number of peremptory challenges and his attempt to characterize this claim as ineffective assistance is unpersuasive.

We must observe that his peremptory challenge claims were waived when the jury was sworn at trial. RCr 9.36(3). His allegation of error is not proper in an RCr 11.42 proceeding. Haight now asserts that he wanted to peremptorily strike two jurors, but the motion does not indicate whether he desired to strike those jurors who were peremptorily challenged or any reason that Haight gave to counsel in support of his alleged desire. The allegation with respect to a juror as "being a woman whose father had been a police officer" does not satisfy the requirement of specificity required in RCr 11.42(2).

Haight's reliance on *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), is without merit. Invoking the doctrine of structural error does not persuade us that the errors claimed here are of the nature which deprived the defendant of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determining guilt or innocence. There was no structural error in providing Haight the number of peremptory challenges provided by the rule and this Court rejected the allegations of juror bias on direct appeal. Haight cannot show prejudice by simply alleging ineffective assistance of counsel. There is no reasonable probability that the result of his trial would have been any different under the standards provided in *Strickland*.

There is no constitutional right to peremptory challenges. *McQueen*, citing *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *See also United States v. Boyd*, 86 F.3d 719 (7th Cir.1996), for a review of a situation where a criminal defendant makes a post-verdict challenge to the exercise of peremptory strikes by defense counsel. The conduct of trial counsel did not deprive Haight of this right to use peremptory challenges. Counsel was not ineffective.

### III. Amended Motion

Haight argues that he was denied a complete opportunity to present his RCr 11.42 claims because the trial judge did not allow him to file an amended or supplemental motion. Haight admits that he told the court that it would be important to amend his motion and that he would need at least six months to do so. Within that six-month period, he filed only a motion for leave to amend with no actual amendment. At the hearing of March 16, 1998, the trial judge asked Haight what other grounds should be considered. Haight's counsel indicated that they needed funding and they were not comfortable with filing an amendment and he could not state with specificity what those other issues would be. The purpose of RCr 11.42 is to provide the opportunity to present known grievances and not the chance to research potential grievances. *Gilliam v. Commonwealth*, Ky., 652 S.W.2d 856 (1983). The verdict was rendered in 1994. Haight had sufficient time in which to investigate the issues and formulate arguments to present to the Court. He tendered no amended petition and simply solicited an open end approval to amend. The trial judge did not deny Haight an opportunity to present his claims. He was not denied any due process or fundamental fairness.

### IV. Expert Funding

Haight argues that he wanted funds during the post-conviction proceedings to hire a neuropsychologist to examine him for organic brain damage. Trial counsel had claimed that he did not know of the need for a neurological examination until after the trial had started.

█ Before Haight made any request for funding based on his indigent status, the Commonwealth moved to prohibit any ex parte communications between the defense and the trial judge. The trial judge, relying on *Sanborn,* denied the request for an ex parte hearing for expert fundings, noting that there is no authority to support ex parte motions for hearings for expert fundings in an RCr 11.42 motion. Haight contends that he wanted to ask for funding for expert assistance in neuropsychology in order to prove ineffective assistance of counsel at trial. The trial judge correctly interpreted *Sanborn* in reaching his decision. This Court has already found that Haight had the full benefit of mental health evaluations and experts during his trial. *Haight, supra.*

█ The expert offered by Haight said that there was a high degree of certainty that it's possible that Haight may suffer from brain damage which may be material in a defense based upon extreme emotional disturbance. This is mere speculation. A RCr 11.42 proceeding does not provide for a relitigation of the performance of trial counsel. It should be recalled that the report by the expert was not filed until after the circuit court denied the RCr 11.42 motion. We find that Haight has not demonstrated any prejudice in this regard. He was not denied fundamental due process under either the federal or state constitution.

## V. Discovery

█ Haight argues that he was denied discovery. Haight filed a written motion for discovery of certain documents and information thought to be in the possession of the Commonwealth. The prosecutor objected. Haight contends that he sought to discover whether the Commonwealth had made deals or agreements with crucial prosecution witnesses. He also sought to produce any documents in the possession of the Commonwealth relating to the background of the Haight family.

The trial judge correctly denied the discovery motion based on *Sanborn* because discovery is not authorized in a post-conviction proceeding. The citation by Haight to *Bowling v. Commonwealth,* Ky., 926 S.W.2d 667 (1996) and *Skaggs v. Redford,* Ky., 844 S.W.2d 389 (1992) are incorrect. *Skaggs,* holds that discovery is not necessary because the material would have already been turned over during the prosecution phase or the trial phase. Citation to *East v. Scott,* 55 F.3d 996 (5th Cir.1995) is also inappropriate and does not provide authority for discovery in RCr 11.42 proceedings. Haight was not entitled to discovery because the purpose of the RCr 11.42 motion is to provide a basis for known grievances and not an opportunity to conduct a fishing expedition for possible grievances. *See Sanborn* at 910. There was no violation of the rights of Haight in denying discovery at this stage.

## VI. Jury Issues

Haight now complains that defense counsel failed to render effective assistance when he made no motions to strike for cause unqualified jurors, when he did not question certain jurors about publicity or mitigating factors, when he incorrectly defined extreme emotional disturbance, when he failed to move for a mistrial and when he did not investigate the under representation of African Americans in the jury pool.

█ The trial judge acted correctly in denying the RCr 11.42 motion with respect to the allegations concerning individual jurors and the jury pool. The petition presented failed to state with particularity facts which, if true, would warrant relief and that defense trial counsel was constitutionally ineffective. There is no reason to

believe that but for trial defense counsel's errors, there is any reasonable probability that the result of the trial would have been any different or that Haight did not receive a fair trial and a sentence that was reliable.

The questions relating to an African American juror were rejected on direct appeal by this Court. *Haight*, 938 S.W.2d 243 (1996), when it held that the defense decision to reject objections to the juror was legitimate trial strategy.

The complaint about juror Kaiser was not raised in direct appeal. Our review of the juror's answers indicates that he was open to a range of potential penalties and willing to consider all the evidence before fixing a sentence, if any. Allegations regarding juror Helton were rejected in the direct appeal in regard to his exposure to a newspaper article. Nothing in the record indicates that juror Carnes would have been disqualified even if a motion had been properly made. The same is true of juror Cunagin. The complaints about the voir dire of two jurors regarding extreme emotional disturbance do not require RCr 11.42 relief. The allegation with respect to juror Donahue was rejected in the direct appeal of this case. Defense counsel was not ineffective and Haight received a fundamentally fair trial by an impartial jury.

## VII. Adequate Investigation

 This Court has recognized the necessity for complete investigation by defense counsel. We must agree with the view expressed by the United States Supreme Court in *Strickland, supra*, to the effect that counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary under all the circumstances and applying a heavy measure of deference to the judgment of counsel. A reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight, would conduct. *Thomas v. Gilmore*, 144 F.3d 513 (7th Cir.1998). The investigation must be reasonable under all the circumstances. *Stevens v. Zant*, 968 F.2d 1076 (11th Cir. 1992).

 Haight now complains that trial counsel was ineffective and deficient in not seeking expert assistance to evaluate his mental status and psychological makeup as early as possible in preparation for trial. In December of 1985, trial counsel filed a motion for funds for expert witnesses and for an ex parte hearing. The trial judge heard arguments and overruled the motions but granted leave to the defense to establish a need for experts. A month later, the defense made a request for a continuance, stating that it could not make requests for experts until after discovery was completed.

Here, Haight maintains that the need for neuropsychological evaluation and psychopharmacologist evaluation should have been obvious to defense counsel. He asserts that although counsel may have been prevented from expending funds for expert witnesses between May 8, 1991, until *Haight v. Williamson, supra*, was decided on May 14, 1992, counsel was not prevented from otherwise investigating and preparing the case.

On direct appeal, Haight made a claim that he was improperly denied the expert assistance of a neuropsychologist which was rejected when his conviction was affirmed.

The clinical forensic psychologist who examined Haight in preparation for trial, specifically found no evidence that Haight was psychotic or suffered from any serious neurological deficit or was otherwise re-

tarded. This expert testified during the penalty phase of the trial. Here, as in his direct appeal, Haight is creating an issue based on the same brief references and reports from the mid–1970s which mentioned a possibility of brain damage but did not make such a finding.

 The right to funding for expert psychiatric assistance only arises when a defendant's mental state is "seriously in question." *Hunter v. Commonwealth,* Ky., 869 S.W.2d 719, 722 (1994), quoting *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Defense counsel was not ineffective for relying on the opinion of an expert he obtained who determined that Haight had no significant neurological deficit. *See Walls v. Bowersox,* 151 F.3d 827 (8th Cir.1998). Trial counsel is required only to conduct a reasonable investigation. *Mahaffey v. Page,* 151 F.3d 671 (7th Cir. 1998).

In this case, there is no reasonable probability that the omitted evaluations would have changed the result reached by the jury or the sentencing fixed by it. He was not prejudiced by the alleged failure of trial counsel to investigate and present defense and mitigating evidence. There is no showing of either deficient performance or substantial prejudice which are required to present an ineffectiveness of counsel argument.

## VIII. Possibility of Parole

 Haight claims that the jury improperly considered the possibility of parole when it was deliberating about the death penalty and his trial counsel did nothing to seek a remedy or preserve the issue for appellate review. This argument is speculative. Jury testimony that it had improperly considered parole is incompetent under rules prohibiting jurors from being examined to establish grounds for a new trial. *Cf. Gall v. Commonwealth,* Ky., 702 S.W.2d 37 (1985).

Here, Haight has failed to demonstrate any improper consideration of parole by the jury, or any improper extra-judicial influence. Consequently, no ineffective assistance of counsel or prejudice has been shown.

## IX. Sleeping Jurors

 Haight argues that trial counsel was ineffective because he failed to move for a mistrial or make any effort to get factual details into the record regarding the alleged sleeping of jurors during part of the penalty phase. He also contends that the trial judge committed error when he took no action on his own initiative.

Haight does not plead this claim with the specificity required by RCr 11.42(2). He does not state which jurors were alleged to be sleeping and he does not indicate when the event occurred, if it actually took place. Haight is not entitled to the requested relief. *Sanborn* at 911.

Haight does not indicate what information the jurors supposedly missed and how that would have changed the outcome of his trial. If defense counsel did see jurors with their eyes closed, there is no evidence that they were sleeping. In addition there is no evidence that the trial judge ever observed the alleged sleeping.

## X. Previous Plea Bargain

 Haight maintains that defense counsel was ineffective by not introducing evidence during the penalty phase that the Commonwealth had previously entered into a plea bargain. He asserts that he has a right to have the jury which sentenced him consider mitigating evidence. The question of whether a *defendant* has the right to introduce evidence of a withdrawn guilty plea as mitigating evidence has not been decided in the Common-

wealth. There appears to be a split of authority on the issue. *See* Wright & Graham, *Federal Practice and Procedure: Evidence* § 5348 (1980). In terms of our rules, there is a potential conflict between KRE 410, which provides that withdrawn guilty pleas are not admissible against the defendant, and KRE 408, which provides that compromises and offers of compromise are inadmissible. The Commonwealth argues that Haight's prior guilty plea is inadmissible under KRE 408. The argument is not without merit or support. *See id.* On the hand other, Haight argues that KRE 408 is limited to civil cases. *See United States v. Baker and Mazzilli*, 926 F.2d 179 (2nd Cir.1991), construing FRE 408.

▇▇▇ Under the *Strickland* standard for ineffective assistance of counsel, the first thing the aggrieved defendant must show is "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L.Ed.2d at 693. We are at a loss to see how failure to move to admit evidence—the admissibility of which is still an open question—can ever sink below sufficient performance into deficiency. Further, how can it be called an error that deprived Haight of his constitutional right to counsel? If the evidence is not admissible, there can be no error. *See Commonwealth v. Davis*, Ky., 14 S.W.3d 9, 11 (1999). Thus, the error is at most potential error that is in the air, weightless and awaiting decisional law that may or may not give it legal gravity. In short, while the failure to advance an established legal theory may result in ineffective assistance of counsel under *Strickland*, the failure to advance a novel theory never will.

## XI. No Adverse Inference

▇▇▇ Haight complains that trial counsel was ineffective by not requesting that a "No adverse inference" instruction relating to the defendant's right to remain silent be given at the penalty phase. Haight testified at the guilt phase of this trial, but he did not testify during the penalty phase. His counsel did not tender a "No adverse inference" instruction, did not request such an instruction or object to the failure of the court to give one. He asserts that it was incumbent upon the trial judge to instruct the jury that the defendant did not have an obligation to testify in mitigation and no adverse influence could be drawn from his failure to do so.

This claim does not amount to ineffective assistance of counsel. The allegation is not properly presented on his appeal because it was an issue on direct appeal of the case. Haight did testify during the guilt phase of his trial and admitted killing the two victims. *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), is not applicable.

## XII. The Letter

▇▇▇ Haight argues that defense counsel was ineffective when he did not introduce into mitigation evidence a letter which Haight had written to a member of one victim's family. In the letter, Haight admitted committing the murders, expressed sorrow at having caused so much pain and suffering, and further expressed a desire to die for having done so. Defense counsel clearly stated a desire not to reemphasize Haight's guilt phase testimony to the jury when it considered mitigating evidence in the penalty phase. The letter stated in part, "If you think I should pay with my life, then I'd have to agree with you ...." Defense counsel was not ineffective in not introducing the letter into mitigation.

Haight received reasonably effective assistance of counsel. Any alleged ineffectiveness was not so serious as to deprive him of a fair trial and there is no reasonable probability that a different result could have been achieved. An exhaustive review of the record in this case indicates that defense counsel was not ineffective and that Haight received a fundamentally fair trial with a reliable and fair sentence.

The judgment of the circuit court is affirmed.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with STUMBO, J., joining that dissent.

KELLER, Justice, dissenting from order denying petition for rehearing and modifying opinion.

I believe we should grant Haight's petition for rehearing to properly evaluate his claim that his trial counsel was ineffective in failing to introduce evidence that the Commonwealth offered Haight a plea bargain to a total sentence of life imprisonment without possibility of parole for twenty-five years. Although I joined the majority opinion when the Court originally considered Haight's appeal from the trial court's denial of RCr 11.42 relief, after reviewing the authority Haight cites in his petition, I believe Haight has demonstrated that the Court "misconceived the issues presented on the appeal or the law applicable thereto."[1]

In our original opinion, we addressed Haight's claim in Section X and found no deficient performance because KRE 408 and KRE 410 prohibited its introduction:

Haight maintains that defense counsel was ineffective by not introducing evidence during the penalty phase that the Commonwealth had previously entered into a plea bargain. He asserts that he has a right to have the jury which sentenced him consider mitigating evidence. Defense counsel was not ineffective for failing to introduce such an agreement. KRE 408 provides that compromise and offers of compromise are inadmissible. The general inadmissibility of withdrawn guilty pleas is also noted in KRE 410.

Haight argues his trial counsel should have introduced as mitigation evidence the "offer" made by the Commonwealth during plea negotiations—in this case, an offer to spare his life.[2]

Although we suggested a policy of "general inadmissibility" emanates from KRE 410, that rule actually states that such evidence "is not, in any civil or criminal proceeding, admissible *against the defendant* who made the plea or was a participant in the plea discussion."[3] KRE 410 contains no limitations upon evidence introduced *by the defendant.*

The authority Haight cites in his petition convinces me that we incorrectly construed KRE 408 as embracing offers and statements made during plea negotiations contrary to the weight of authority limiting the identical federal rule's scope to offers

1. CR 76.32(1)(b).

2. *See Haight v. Commonwealth,* Ky., 760 S.W.2d 84, 85 (1988):

> As a result of these [plea] negotiations, ... the Commonwealth made an offer to appellant whereby, in return for his guilty plea to two counts of murder and two counts of robbery in the first degree, it would recommend a sentence of life imprisonment without possibility of parole for a period of twenty-five years.
> *Id.*

3. KRE 410 (emphasis added).

to compromise civil matters.[4] I now recognize that the majority's interpretation of KRE 408 illogically treated KRE 410 as redundant. The Kentucky Evidence Rules Study Committee's Commentary to KRE 410 demonstrates that although policy judgments behind KRE 408 and KRE 410 are identical, each rule addresses a different context:

> The considerations underlying Rule 408 on compromises and offers of compromise apply with equal force to criminal pleas, offers to plead, and plea discussions. Resolution of criminal cases through agreement is no less important than the resolution of civil cases through settlement. On the basis of these premises, Rule 410 adopts rules designed to remove evidentiary obstacles to candid discussions between the prosecution and defense in criminal cases and to protect defendants against subsequent use of evidentiary products of the plea process.[5]

The Commonwealth cites only one case to the contrary, *United States v. Verdoorn*,[6] which dates back to shortly after the adoption of the Federal Rules of Evidence and in which the Eighth Circuit Court of Appeals based its conclusion largely on a Federal Rule of Criminal Procedure.[7] The *Verdoorn* Court does draw support from "the rationale of [FRE] 408,"[8] and the Court describes FRE 408 as a rule which fosters plea-bargaining by encouraging confidential and meaningful dialogue. Courts, however, make decisions about whether evidence is admissible or not by examining the rules themselves, not the "policies" which underlie them. We should turn to those underlying policies only where the language of the rule itself is ambiguous. We can always amend the rules of evidence if we find that they do not serve the ends for which we adopted them. Our rules unquestionably embody the policies upon which they are based. Allowing the policy to consume the rule itself, however, allows the tail to wag the dog.

In any event, the language of KRE 408 itself plainly excludes evidence of compro-

---

**4.** *See* 29 Am.Jur.2d (Evidence) § 512:

> [I]t should be noted that Rule 410 generally governs admissibility of evidence of guilty pleas and plea negotiations. It has been held that the rule excluding from evidence offers of compromise or settlement of a claim which is disputed as to either validity or amount applies only to civil litigation, since the reference to "a claim which was disputed as to either validity or amount" does not easily embrace an attempt to bargain over criminal charges. Negotiations over criminal charges or a plea bargain do not ordinarily constitute discussions of a "claim" over which there is a dispute as to "validity" or "amount."

*Id. See also* Charles Alan Wright and Kenneth W. Graham, 23 *Federal Practice and Procedure* § 5306 at 216–219 (1980) ("It seems odd to refer to the prosecution's case against a criminal defendant as a 'claim' ... The arguments [in favor of doing so] are not convincing." *Id.*); *United States v. Baker*, 926 F.2d 179, 180 (2nd Cir.1991); *United States v.*

*Graham*, 91 F.3d 213, 218–219 (D.C.Cir. 1996).

**5.** KRE 410 (Evidence Rules Study Committee Commentary). *See also* Robert G. Lawson, *Kentucky Evidence Law* (3rd Ed.) § 2.50 & 2.55 (Michie 1993) ("With one important alteration, KRE 408 simply codifies ... longstanding rules." *Id.* § 250 at 134. "The principles described in KRE 410 are *akin to* the rules that relate to offers of compromise and settlements.... They are new to Kentucky Law ...." *Id.* § 255 at 137.).

**6.** 528 F.2d 103 (8th Cir.1976).

**7.** *Id.* at 107 ("Plea bargaining is sanctioned by recent amendments to the Federal Rules of Criminal Procedure. Further, Fed. R.Crim. 11(e)(6) (effective August 1, 1975) provides for the general inadmissibility of offers to plea and related statements in connection therewith." *Id.*).

**8.** *Id.*

mise or offers to compromise only when offered "to prove liability or invalidity of the claim or its amount." [9] Because of the different sentencing procedures employed in federal court, none of the federal authority addressing FRE 408's relation to offers or statements made during plea negotiations in criminal cases concerns the admissibility of such statements during a separate jury sentencing procedure like the one we have in Kentucky.[10] Even if this Court were to construe KRE 408 to embrace offers and statements made during plea negotiations by adopting an unwarranted and expansive interpretation of "liability" and "claim," we would fall on our backsides before we could bend over far enough to interpret "its amount" to include a jury's sentencing determination, especially a sentence of death.

In my opinion, the modified opinion is, at best, a slight improvement. The Court now recognizes that the question of KRE 408's applicability to offers and statements made during plea negotiations is a question of first impression for this Court. Instead of answering that question, however, we "fast-forward" to the conclusion and decide that, regardless of this Court's interpretation of KRE 408, Haight's trial counsel did not perform deficiently under

*Strickland* by failing to introduce such evidence. I find incredulous our basis for that conclusion, which I would paraphrase as "Because we haven't told attorneys whether this evidence would be admissible, an attorney's failure to introduce it cannot be deficient performance." I find it inexcusable, however, for this Court, after articulating such a standard for deficient performance, to decline to answer the substantive question, allow the issue to remain unresolved, and offer no guidance to counsel in future cases.

My perceptions are no doubt colored by the fact that, after revisiting the KRE 408 issue, I no longer find it murky, or particularly close. I believe the question of whether the general relevancy requirement at KRE 401 would allow a defendant to introduce evidence of the Commonwealth's offer as mitigation evidence is far closer,[11] however, and I believe the Court should grant the petition for rehearing to finally determine both issues. As concerned as I am that the modified majority opinion perpetuates the error we committed originally, however, I am even more troubled by the modified opinion's contention that no deficient performance can result from trial counsel's failure to make arguments new to this Court.[12] This con-

9. KRE 408.

10. *See* RCR 9.84; KRS 532.055.

11. A offer by the Commonwealth to recommend a life sentence in exchange for a guilty plea to a capital offense would not be direct evidence "bearing on the defendant's character, prior record or circumstances of the offense, or relative to one of the specified statutory mitigating circumstances," *Jacobs v. Commonwealth*, Ky ., 870 S.W.2d 412, 419–420 (1994) *citing Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Given a prosecutor's special ethical responsibilities, *see* SCR 3.130(3.8) comment 1 ("A **prosecutor h**as the responsibility of a minister **of justice an**d not simply that of an advocate"

*Id.*); *Bailey v. Commonwealth*, 193 Ky. 687, 237 S.W. 415, 417 (1922) ("[T]he duty of a prosecuting attorney is not to persecute, but to prosecute .... He should always be interested in seeing that the truth and the right shall prevail ...." *Id.*), such an offer might, however, be inferential evidence of the strength of a defendant's other mitigating evidence.

12. I dispute the majority's characterization of Haight's argument as "novel." First, this Court's past use of that term creates an pejorative connotation roughly equivalent to "frivolous." *See, e.g., Commonwealth v. Cooper*, Ky., 899 S.W.2d 75, 78 (1995) ("We have admonished against 'novel theories to revise well-established legal practice and princi-

tention raises the *Strickland* deficient performance bar even higher and discourages the type of innovative advocacy necessary to the defense of a capital case.

I believe this Court should grant Haight's petition for rehearing specifically to reconsider his allegation concerning his trial counsel's failure to introduce evidence that the Commonwealth offered him a plea bargain which would have spared his life. My review of the law leads me to believe that this Court misconceived the law applicable to Haight's claim when we held that such evidence would have been inadmissible under KRE 408. We should decide this issue and properly evaluate Haight's claims of ineffective assistance of counsel for the benefit of the bench and bar.

STUMBO, J., joins.

ple[.]' " *Id.*); *Holbrook v. Knopf*, Ky., 847 S.W.2d 52, 55 (1992) ("We have no intention that such cases should encourage lawsuits espousing novel theories . . . ." *Id.*); *Neel v. Wagner–Shuck Realty Co.*, Ky., 576 S.W.2d 246, 249 (1978) ("This is a novel theory unsupported by reason or authority." *Id.*). My examination of the merits of Haight's interpretation of KRE 408 leads me to believe that his interpretation is far from frivolous. Second, I believe it is the Commonwealth and not Haight who has suggested this "novel theory." Haight's RCr 11.42 petition merely contended that trial counsel should have introduced this evidence, and appears to have relied on the presumption of admissibility for relevant evidence contained in KRE 402 ("All relevant evidence is admissible, except as otherwise provided . . . ." *Id.*). *The Commonwealth* first suggested that KRE 408 would prohibit the introduction of this evidence.