RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0523-MR

JARROD MICHAEL WEISS,
AKA PRINCE ALLAH                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE MITCH PERRY, JUDGE
ACTION NO. 14-CR-002387-001 AND 14-CR-002531


COMMONWEALTH OF KENTUCKY                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Jarrod Michael Weiss, aka Prince Allah (Weiss), appeals

from an August 23, 2022, order of the Jefferson Circuit Court's denying his

Kentucky Rules of Criminal Procedure (RCr) 11.42 motion for post-conviction

relief.[1]  We affirm.

## BACKGROUND

The facts underlying Weiss's convictions were recounted in *Weiss v.*

*Commonwealth*, No. 2016-SC-000183-MR, 2017 WL 5034472 (Ky. Nov. 2, 2017)

(unpublished):

> On the afternoon of April 27, 2011, in Louisville, Kentucky, Tanner Browning was spending time with friends in his apartment.  Around the time Tanner's guests were departing, Appellant, Jarrod Michael Weiss, who lived in the same apartment complex, parked his vehicle in front of Tanner's apartment.  At that time, Appellant displayed his new stereo system for Tanner and his friends.  Eventually, Tanner's friends left, while Tanner and Appellant remained together in the parking lot.  What occurred thereafter is unknown.  However, later that evening, Isaac Clark, a neighbor and friend of Tanner's, observed Tanner's patio door ajar.  Clark grew concerned and decided to enter the apartment to check on Tanner.  Clark discovered Tanner's lifeless body lying inside his apartment bedroom.  Tanner died from a fatal gunshot wound.
>
> The Saint Matthews Police Department quickly focused on Appellant as the culprit.  Countless witnesses confirmed that Appellant was the last individual seen with Tanner.  Police also uncovered that Appellant had

---

[1] This order was not final and appealable.  Jarrod Michael Weiss, aka Prince Allah (hereinafter Weiss) previously appealed the circuit court's order denying his Kentucky Rules of Criminal Procedure (RCr) 11.42 motion.  We dismissed his appeal as interlocutory by Opinion and Order rendered December 15, 2023. *See Weiss v. Commonwealth*, No. 2022-CA-1083-MR, 2023 WL 8656170 (Ky. App. Dec. 15, 2023).  The circuit court subsequently entered a final order on March 4, 2024, from which this appeal follows.

purchased a stolen gun from Tanner's roommate. Yet, law enforcement had virtually no physical evidence tying Appellant to the crime, so no arrest was made for several years. Eventually, Appellant's wife, Lavonna Blount, her brother, Gerald Blount, and her sister-in-law, Ashley Blount, came forward and told detectives that Appellant had confessed to murdering Tanner. All three witnesses indicated that Tanner owed Appellant money for marijuana and that Appellant went to Tanner's to retrieve the money. When Tanner could not produce the money, Appellant closed his eyes and shot Tanner. Appellant then returned to his apartment where he cut up his pants and attempted to flush the cuttings down the toilet. Appellant also disposed of the gun.

On September 15, 2015, a Jefferson County Grand July indicted Appellant for one count each of murder and tampering with physical evidence. A two-week trial commenced on January 4, 2016, during which thirty-seven witnesses testified. Ultimately, the Jefferson Circuit Court Jury found Appellant guilty on both charges, in addition to being a persistent felony offender in the second degree. The trial court sentenced Appellant in conformity with the jury's recommended sentence of thirty years' imprisonment. . . .

*Id*. at *1.

Our Supreme Court affirmed on direct appeal. Weiss thereafter filed an RCr 11.42 motion for post judgment relief, alleging ineffective assistance of counsel and asking for an evidentiary hearing. The Jefferson Circuit Court ultimately denied his motion. Weiss then filed this appeal. Additional facts will be discussed as necessary in our analysis.

## STANDARD OF REVIEW

The Kentucky Supreme Court has set forth the following standards for

our review of ineffective assistance of counsel claims:

> We evaluate ineffective assistance of counsel claims
> under the standard set forth in *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),
> adopted by this Court in *Gall v. Commonwealth*, 702
> S.W.2d 37 (Ky. 1985). Under the *Strickland* framework,
> an appellant must first show that counsel's performance
> was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct.
> 2052. A "deficient performance" contains errors "so
> serious that counsel was not functioning as the 'counsel'
> guaranteed the defendant by the Sixth Amendment." *Id*.
> Second, the appellant must show that counsel's deficient
> performance prejudiced his defense at trial. *Id*. "This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose result
> is reliable." *Id*. An appellant must satisfy both elements
> of the *Strickland* test in order to merit relief. *Id*.

> When faced with an ineffective assistance of counsel
> claim in an RCr 11.42 appeal, a reviewing court first
> presumes that counsel's performance was reasonable.
> *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky.
> 2007) (quoting *Haight v. Commonwealth*, 41 S.W.3d
> 436, 442 (Ky. 2001), *overruled on other grounds by
> Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009)).
> We must analyze counsel's overall performance and the
> totality of circumstances therein in order to determine if
> the challenged conduct can overcome the strong
> presumption that counsel's performance was reasonable.
> *Haight*, 41 S.W.3d at 441-42. In addition, the trial
> court's factual findings and determinations of witness
> credibility are granted deference by the reviewing court.
> *Id*. Finally, we apply the de novo standard when
> reviewing counsel's performance under *Strickland*.
> *Bussell*, 226 S.W.3d at 100.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

Where, as here, a trial court does not hold an evidentiary hearing on an RCr 11.42 motion, "appellate review is limited to 'whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction.'" *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (quoting *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967)). "A hearing is required if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citing *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993), *cert. denied*, 510 U.S. 1049 (1994); *Lewis*, 411 S.W.2d at 322); *see also* RCr 11.42(5).

## ANALYSIS

Weiss's first argument on appeal is that the circuit court erred by rejecting his contention that his trial counsel was ineffective for not subpoenaing ballistics expert Kelly Fite to testify. For context, the gun that Weiss allegedly used to kill Tanner Browning was never found, but the manufacturer's box that the gun had been packaged in had included two test-fire shell casings. Those two casings, along with a casing of the same kind of bullet that was discovered at the crime scene, were sent to the Kentucky State Police (KSP) laboratory for comparison testing. The KSP ruled the results of its testing were inconclusive

because the casings lacked sufficient similarities and differences that could confirm or eliminate them as matches. At trial, KSP ballistics expert, Leah Collier, testified consistently with those findings. The lead detective that investigated this case, Eddie Napier, testified the casings were later sent to and reviewed by Fite; and Napier related that Fite's report – which was introduced without objection – stated that the casings did not match. Furthermore, "[t]wo independent ballistics experts also testified that the test-fired casings did not match the casing found at the scene." *Weiss*, 2017 WL 5034472 at \*2.

With that in mind, the circuit court did not err by rejecting Weiss's contention that his trial counsel was ineffective for not subpoenaing Fite. Fite's expert opinion relevant to this case, *i.e.*, that the casings did not match, was communicated to the jury through his report and Napier's testimony. None of the experts who testified at trial opined that the casings matched, and Fite's opinion that the casings did not match was merely cumulative. More to the point, the jury convicted Weiss despite the evidence regarding the casings. Thus, it strains credulity to say that any additional testimony from Fite about the casings – which would have at best echoed his report – could have affected the outcome of Weiss's trial. Indeed, our evaluation of the remaining evidence, like that of our Supreme Court, "reveals, beyond a reasonable doubt, that a conviction would have ensued" regardless. *Weiss*, 2017 WL 5034472 at \*4. As our Supreme Court explained:

[T]here was substantial proof of Appellant's guilt presented to the jury. Numerous witnesses testified that Appellant was the last individual with Tanner, as close as thirty minutes preceding his death. Three witnesses testified that Appellant confessed to murdering Tanner. All three witnesses' accounts of Appellant's confessions were corroborated by other evidence. This included the fact that Tanner owed Appellant money for drugs, Appellant had a loaded gun, and Appellant tried to flush his cut-up pants down the toilet—the latter corroborated by the property manager having to fix the plumbing.

*Id.*

Weiss's second argument is that the circuit court erred by rejecting his contention that his appellate counsel was ineffective for not raising a mistrial issue during his direct appeal stemming from an alleged *Brady*[2] violation. Specifically, on the third-to-last day of his trial, the Commonwealth produced a September 10, 2014, DNA lab report from KSP relating to items discovered on Tanner Browning's body, including a plastic cigar tip, a key ring, and Browning's jeans. The analysis of the key ring detected a male DNA profile that did not match Browning or Weiss. The analysis of the cigar tip detected a DNA profile that matched Browning, not Weiss. The analysis of the jeans detected a DNA profile that matched Browning, not Weiss. Due to the belated production of this report,

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

which Weiss viewed as exculpatory, Weiss moved on the morning of the second-to-last day of trial for a mistrial. However, the circuit court overruled Weiss's motion, opting instead to permit Weiss to recall Detective Napier to the stand and question him about the report. When Weiss did so later that morning, Detective Napier testified that he was the officer who had requested the report; he testified about the contents of the report discussed above; and he further acknowledged that the report had been revealed to the defense for the first time the prior evening.

As indicated, Weiss asserts his prior appellate counsel prejudiced him and was therefore ineffective for failing to argue during his direct appeal that he was entitled to a mistrial due to the Commonwealth's alleged *Brady* violation stemming from its belated production of the September 10, 2014, lab report. We disagree. "Broadly speaking, '[w]hether to grant a mistrial is within the sound discretion of the trial court, and 'such a ruling will not be disturbed absent . . . an abuse of that discretion.'" *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005)). The circuit court committed no abuse in denying his request for a mistrial, and Weiss accordingly suffered no prejudice when his prior appellate counsel decided not to raise that issue during his direct appeal. As explained by the Kentucky Supreme Court, "[t]he customary remedy for a *Brady* violation that surfaces mid-trial is a continuance and a concomitant opportunity to analyze the new information and, if

necessary, recall witnesses." *Mills v. Commonwealth*, ___ S.W.3d ___, 2025 WL 1717565 at \*5 (Ky. 2025) (quoting *United States v. Mathur*, 624 F.3d 498, 506 (1st Cir. 2010)).  Here, after the Commonwealth produced the lab report mid-trial, the circuit court permitted Weiss as much time and opportunity as he requested to analyze the report, recall witnesses, and to bring the report and the Commonwealth's tardy disclosure to the jury's attention.

Lastly, Weiss argues the circuit court erred when it denied his request for additional findings relating to additional ineffective assistance of counsel claims that he made below.  Weiss is incorrect.  The requirement for findings by the circuit court in RCr 11.42 proceedings is contained in RCr 11.42(6) which states in relevant part, "[a]t the conclusion of the hearing or hearings, the court shall make findings determinative of the material issues of fact and enter a final order accordingly."  If there is no hearing, then no findings are required.  *Stanford*, 854 S.W.2d at 744.  No hearing was held by the circuit court on Weiss's RCr 11.42 motion.  As such, the circuit court was not required to prepare any findings of fact in relation to Weiss's RCr 11.42 motion.  Apart from asking for additional findings, Weiss does not identify or raise any other arguments regarding the additional ineffective assistance of counsel claims that he made below.  He has therefore waived review of those claims.  *See Commonwealth v. Pollini*, 437 S.W.3d 144, 148 (Ky. 2014).

**CONCLUSION**

For the foregoing reasons, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David L. Stewart
La Grange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky