## Stewart v. Commonwealth.

(Decided June 20, 1919.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1.  Army and Navy—Offenses by Persons in Military Service—Jurisdiction of Military Tribunals—Waiver—Jurisdiction of Civil Courts.—Articles of war, enacted August 29, 1916 (Comp. St. 1916, sec. 2308a), do not confer on military tribunals exclusive jurisdiction over crimes against the state law, committed within the United States by persons subject to military law, but the jurisdiction of such tribunals, being concurrent with that of the state courts, may be waived in favor of the latter.

2.  Criminal Law— Witnesses— Impeachment — Evidence — Warrant Charging Another Offense—Admissibility.—In a criminal prosecution for robbery, evidence, by the chief of police, that his de-

partment had a warrant charging the defendant with another offense, was not admissible for the purpose of impeachment or for any other purpose.

3. Criminal Law—Trial—Misconduct of Counsel—Reversible Error. —In a criminal prosecution, where the attorney for the Commonwealth persisted in asking improper and prejudicial questions, which the court had ruled to be wrong, for the purpose of getting before the jury evidence which the law did not permit them to hear, a judgment of conviction will be reversed, the refusal of the court to permit the witness to answer not being sufficient to remove the prejudicial effect which the questions had on the minds of the jury.

JOHN T. MURPHY for appellant.

CHARLES H. MORRIS, Attorney General, and STEPHEN L. BLAKELY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Joseph R. Stewart, a soldier in the United States army, was indicted for robbery by the grand jury of Kenton county. On a trial before a jury, he was convicted of grand larceny and his punishment fixed at one year's confinement in the penitentiary. Judgment was entered accordingly and he appeals.

As it is not seriously contended that the evidence was insufficient to take the case to the jury or to sustain the verdict, it will be unnecessary to detail the evidence.

While numerous grounds for a new trial were relied on below, the only two grounds urged for a reversal of the judgment are that the Kenton circuit court was without jurisdiction to try appellant, and that the Commonwealth's attorney was guilty of misconduct in interrogating one of the witnesses for the prosecution.

(1) While appellant was in custody it was made to appear to the Kenton circuit court that he was in the military service of the United States, and was a member of the 12th Company, 3rd Battalion, 139th Depot Brigade, at Camp Zachary Taylor, and was wanted by the military authorities there on a charge of being absent without leave, and a written request for the surrender of appellant having been presented to the court, an order was entered directing that he be surrendered to Corporal William Trimble for delivery to the proper military

authorities at Camp Zachary Taylor. About a month later, it was made to appear to the Kenton circuit court that the military authorities had waived jurisdiction to try appellant for the offense of robbery, and had surrendered him to the civil authorities. Thereupon, an order was entered directing the jailer to take appellant into custody, and reciting the fact that the court had assumed jurisdiction to try appellant.

It is the contention of appellant that, under the present Articles of War, the jurisdiction of courts-martial is exclusive as to the offense with which he was charged, and being exclusive cannot be waived. The original Articles of War (Rev. St., sec. 1342, article 58) provided as follows:

"In time of war, insurrection, or rebellion, larceny, robbery ,burglary, arson, mayhem, manslaughter, murder, assault and battery with intent to kill, wounding, by shooting or stabbing with an intent to commit murder, . . . or assault and battery with an intent to commit rape, shall be punishable by the sentence of a general court-martial when committed by persons in the military service of the United States, and the punishment in any such case shall not be less than the punishment for the like offense by the laws of the state territory or district in which such offenses may have been committed."

In discussing the jurisdiction of courts-martial, the Supreme Court, speaking through Mr. Justice Field, used the following language in Coleman v. Tennessee, 97 U. S. 509, 24 L. Ed. 1118;

"But the section does not make the jurisdiction of the military tribunals exclusive of that of the state courts. It does not declare that soldiers committing the offenses named shall not be amenable to punishment by the state courts. It simply declares that the offenses shall be 'punishable,' not that they shall be punished by the military courts; and this is merely saying that they may be thus punished. Previous to its enactment the offenses designated were punishable by the state courts, and persons in the military service who committed them were delivered over to those courts for trial; and it contains no words indicating an intention on the part of Congress to take from them the jurisdiction in this respect

which they had always exercised. With the known hostility of the American people to any interference by the military with the regular administration of justice in the civil courts, no such intention should be ascribed to Congress, in the absence of clear and direct language to that effect. We do not mean to intimate that it was not within the competency of Congress to confer exclusive jurisdiction upon military courts over offenses committed by persons in the military service of the United States. As Congress is expressly authorized by the Constitution 'to raise and support armies' and 'to make rules for the government and regulation of the land and naval forces,' its control over the whole subject of the formation, organization and government of the national armies, including therein the punishment of offenses committed by persons in the military service, would seem to be plenary. All we now affirm is that by the law to which we are referred, the thirtieth section of the Enrollment Act, no such exclusive jurisdiction is vested in the military tribunals mentioned. No public policy would have been subserved by investing them with such jurisdiction, and many reasons may be suggested against it.''

Section 1342, Rev. St. was amended by the act of August 29, 1916, c. 418, sec. 3, 39 Stat. 650. (Comp. St. 1916, sec. 2308a.) Article 93 of the latter act is as follows:

''Any person subject to military law who commits manslaughter, mayhem, arson, burglary, robbery, larceny, embezzlement, perjury, assault with intent to commit any felony or assault with intent to do bodily harm, shall be punished as a court-martial may direct.''

It is argued that as Mr. Justice Field intimated in the case of Coleman v. Tennessee, *supra,* that if the original Articles of War had declared that the offenses named ''shall be punished'' by the military courts, instead of ''shall be punishable,'' the language might have been sufficient to confer exclusive jurisdiction on military tribunals, and as Congress thereafter amended the original Articles of War, by the act of 1916, and adopted the precise language which Mr. Justice Field intimated would be sufficient, the conclusion is irresistible that Congress intended to change the prior rule, and to make the jurisdiction of military tribunals exclusive. While this argument is entitled to some consideration, it loses much

of its force when it is recalled that Mr. Justice Field also used the following language:

"With the known hostility of the American people to any interference by the military with the regular administration of justice in the civil courts, no such intention should be ascribed to Congress, in the absence of clear and direct language to that effect."

Can it be said that the use of the words, "shall be punished," instead of "shall be punishable," indicates such an intention on the part of Congress? We think not. Had it not been for the language of Mr. Justice Field, we doubt if it would have occurred to anyone that there was any substantial difference between the words "shall be punishable" and "shall be punished," so far as their jurisdictional effect is concerned. Indeed, we are firmly persuaded that had Congress intended to make so radical a change in the law as to deprive state courts of their jurisdiction, and to confer exclusive jurisdiction on the military tribunals, it would not have attempted to do so by merely substituting the word "punished" for the word "punishable," but would have declared its purpose in language that could not have been mistaken. This view of the question finds support in the recent case of United States v. Hirsch, 254 Fed. 109, where it was held that the Articles of War enacted August 29, 1916, do not deprive the civil courts, either in time of peace or war, of the concurrent jurisdiction previously vested in them over crimes against either federal or state law committed within the United States by persons subject to military law. Under the original Articles of War, the jurisdiction of the court-martials was not exclusive, but was concurrent with that of the civil courts, Griffin v. United States, 206 U. S. 333, 51 L. Ed. 1084, 11 Ann. Cases 640; Franklin v. United States, 216 U. S. 559, 54 L. Ed. 615, and since this rule has not been changed by the act of 1916, it follows that military tribunals have not now exclusive jurisdiction of the offense with which appellant was charged. That being true, they could waive their right to try appellant, and having done this, the Kenton circuit court necessarily had jurisdiction to try the case.

(2) In rebuttal, the Commonwealth introduced Theodore Kluemper, who testified as follows (direct examination by Mr. Blakey): .

"Q. What is your name? A. Theodore Kluemper. Q. You are the chief of police of Covington? A. Yes, sir. Q. How long have you been chief of police? A. About four years. Q. Do you know the defendant, Joe Stewart? A. Yes, sir. Q. How long have you known him? A. Several years. Q. Do you know the reputation he bears in this community and among the people he associates with for honesty? (Objected to by defendant.) The Court—Q. The question is, whether or not you know the reputation of Joseph Stewart in the community in which he lives for honesty? (Objected to by defendant; objection overruled. Defendant excepts.) A. Yes, sir. Mr. Blakey—Q. What is that reputation in this community for honesty? (Objected to by defendant; objection overruled. Defendant excepts.) A. It is bad. Q. How long has Joe Stewart been out of town? A. He has been in the army. We have a warrant down in the police department for him. (Defendant objects and moves to exclude the latter part of the answer from the consideration of the jury; motion sustained and that part of the answer, 'We have a warrant down in the police department for him,' is excluded and the jury instructed not to consider same.) Q. You are not speaking of the warrant in this case? (Defendant objects and moves to exclude the question, which motion is sustained and the jury instructed not to consider same.) (Defendant moves to set aside the swearing of the jury and to remand the case; motion overruled. Defendant excepts.) Q. Has that other warrant ever been served? (Objected to by defendant; objection sustained.) (Defendant moves to set aside the swearing of the jury, which motion is overruled. Defendant excepts.)"

Under the circumstances of this case, evidence that the police department has a warrant, charging appellant with another offense, was not admissible for the purpose of impeachment or for any other purpose. Section 597, Civil Code; Ashcraft v. Commonwealth, 60 S. W. 931, 22 Ky. Law Rep. 1542; Consolidation Coal Co. v. Vanover, 166 Ky. 172, 179 S. W. 43; Clary v. Commonwealth, 163 Ky. 48, 173 S. W. 171. Hence, the court did not err in excluding the answer, "We have a warrant down in the police department for him." Had the interrogation stopped there, doubtless no harm would have resulted, but the Commonwealth's attorney, for the purpose of

bringing to the attention of the jury, the fact that the warrant referred to by the witness was not the warrant charging appellant with the offense for which he was being tried asked the following question: "You are not speaking of the warrant in this case?" To this question an objection was sustained and the jury instructed not to consider same. Not being content with the futility of his efforts to get before the jury the fact that defendant was charged with another offense, the attorney for the Commonwealth went still further and asked the following question: "Has that other warrant ever been served?" thus bringing more forcibly to the attention of the jury the fact that appellant had been charged with another offense.

We have frequently ruled in civil cases that where counsel persistently pursues a line of interrogation, which the court rules to be wrong, and which an attorney, reasonably well acquainted with the rules governing the admissibility of evidence, must know to be improper, the conclusion is irresistible that it is done for the purpose of influencing and prejudicing the minds of the jury in arriving at a verdict, and where the trial court permits such conduct to go unpunished, there remains nothing for this court to do but to deprive the party whose counsel so offended, of the fruits of his victory by reversing the judgment. L. & N. R. R. Co. v. Payne, 133 Ky. 539, 118 S. W. 352; L. & N. R. R. Co. v. Reaume, 128 Ky. 90, 107 S. W. 290; Shields' Admr. v. Rowland, 151 Ky. 140, 151 S. W. 408. There is every reason why the same rule should apply to a criminal prosecution, where the life or liberty of the defendant is at stake, and so it has been held that where the attorney for the Commonwealth persists in asking improper and prejudicial questions, for the purpose of getting before the jury evidence which the law does not permit them to hear, the judgment of conviction will be reversed, since the refusal of the court to permit the witness to answer cannot remove the prejudicial effect which the questions had on the minds of the jury. Cargill v. Commonwealth, 13 S. W. 916. Under this rule, the conduct of the Commonwealth's attorney was such as to require a reversal of the judgment.

Judgment reversed and cause remanded for a new trial consistent with this opinion.