## Vontrees v. Commonwealth.

Oct. 13, 1942.

584

Rodes K. Myers and August Winkenhofer, Jr., for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant has been convicted in the Warren Circuit Court of the crime of manslaughter under an indictment charging him with the murder of his brother, Robert Vontrees, and sentenced to the penitentiary for ten years. He has appealed, asking a reversal of the judgment upon the grounds that (1) the verdict of the jury is flagrantly against both the law and the evidence; (2) misconduct of the Commonwealth's attorney during the trial and in his closing argument to the jury; and (3) the trial court should have sustained his motion to peremptorily instruct the jury to find a verdict of acquittal.

The homicide occurred in the colored section or neighborhood of the city of Bowling Green, Kentucky, in the latter part of July, 1941. It appears that the trouble had its origin in a family controversy among appellant, his brothers and sisters-in-law (all colored) about three days previous to the homicide. It appears from the evidence that appellant's brother Sam Vontrees is an invalid and confined to his bed. Sometime within the week just previous to the homicide which occurred on a Saturday, the deceased was at the home or

about the premises of Sam cutting grass with a grass sickle; he heard Sam calling for help, indicating that he was in distress, and deceased ran into the house and found Sam's wife assaulting him and he, deceased, assaulted her with the grass sickle, inflicting cuts and wounds on her body. Appellant caused a warrant to be issued for deceased, charging him with the offense of cutting and wounding. According to the evidence of appellant and some of his witnesses, deceased became angered because of appellant having caused the warrant to be issued against him and then began making threats against the life of appellant, stating that upon sight or when they met that he would kill appellant or that appellant would have to kill him, or words to that effect. On the evening of the homicide appellant started from his place of work to his home and went by the home of his brother Sam and deceased happened to be coming along a street near Sam's home and he and appellant met with each other and engaged in a controversy resulting in appellant's shooting and killing deceased.

According to the evidence of appellant, when he arrived at or near Sam's home he saw the deceased and then started toward his home in an effort to avoid having trouble with deceased, but that deceased called to him, calling him vile names and asked him to stop and said he was going to kill appellant or that appellant would have to kill him. Appellant said that he kept going on toward his home but motioned his hand back at deceased, saying "go back Bob go back, I don't want to have any trouble with you," but deceased still insisted that he stop and again said that he was going to kill him. He said that deceased had something in his hand or made some maneuver with his hand and from his conduct, threats and maneuvers he thought that deceased was going to kill him and that he then shot the deceased in self-defense.

It appears that there was a large number of eye witnesses to the homicide, but counsel for the Commonwealth did not introduce all of them and the others testified in behalf of appellant. The majority of the eye witnesses who testified corroborated appellant but about three Commonwealth witnesses seriously contradicted the statements of appellant and his witnesses.

Eunice Lively testified that immediately after deceased was shot Ruby Vontrees, wife of George Von-

trees, ran to the deceased and took something off his body but this evidence was contradicted by Ruby and a number of other witnesses who immediately arrived at the scene, all of whom testified that they saw no weapon or anything about the deceased except that he had a cigarette between his fingers, and some of the witnesses testified that he had the cigarette in his hand just immediately before the controversy started between him and appellant. Without giving a further resume of the evidence for the appellant it is sufficient to say that if the jury had seen proper to have believed him and his witnesses a verdict of acquittal would have been proper.

Ruby Vontrees testified, in substance, that the deceased had been at her home practically all day and started home about 5:30 p. m.; when deceased got opposite Sam's house appellant emerged from some high weeds, referred to by the witness as "Johnson grass", and began shooting at the deceased previous to any conversation or controversy of any nature; after he fired the first shot deceased said "You done shot me once, now shoot me again." She further stated that deceased had nothing in his hand and was making no attempt to do anything to appellant. She denied having taken anything off deceased's body after he fell and said that he had nothing on his person but a box of tobacco and some keys. Ruby was corroborated by her nine year old daughter, who was also an eye witness to the homicide. Mary Covington testified, in substance, that she saw appellant emerge from the weeds and begin shooting at deceased and before anything was said, and after appellant fired the first shot, deceased said "You done shot me once, now shoot me again." The witness further stated that she saw deceased going down the street just before he was assaulted by appellant and that deceased was smoking a cigarette and that she immediately went to the deceased, where he was lying in the ditch after he was shot, and when she got there the burning cigarette was still between his fingers. Another contradiction in the evidence is that appellant claims that deceased was advancing on him at the time he shot deceased, but it is shown by a number of witnesses that deceased was on the opposite side of the street from appellant. It is fairly well established that deceased had no pistol or other firearms and could not have harmed appellant at the distance he was from him. Curtis Henderson, a

policeman of Bowling Green, testified that when he went to the home of appellant to arrest him just after the homicide appellant came out of the house with his pistol and said:

> "Here it is. Here's what I killed the damn son of a bitch with, right here."

It is argued for the Commonwealth, and perhaps with some merit, that the language of appellant in reference to the slaying of his brother is inconsistent with his claim that he was forced to take the life of his brother in self-defense. According to the evidence of the witnesses for the Commonwealth, the shooting of deceased by appellant was unnecessary and indeed unprovoked. Very clearly the evidence is sufficient to sustain the jury's verdict of conviction. This conclusion also disposes of ground No. 3.

One instance of alleged misconduct of the Commonwealth's attorney relates to his cross-examination of Eunice Lively, who testified that she saw Ruby Vontrees take something off the body of deceased immediately after he had fallen, but she could not identify the object or say what it was. On cross-examination the Commonwealth's attorney asked the witness what the object looked like, and further asked for a description of the object, using language perhaps unnecessary. At this point counsel for appellant objected to the questions and moved the court to discharge the jury. It is insisted that the substantial rights of appellant were seriously prejudiced because the line of questions asked the witness made her appear ridiculous in the minds of the jury and caused them to think lightly of her testimony, or discredit her. Counsel for the Commonwealth had the right to test the witness' knowledge of the object she claimed that she saw taken from the body of deceased by asking her to describe it if she could do so for the purpose of ascertaining what the object might have been. While better diction might have been chosen by counsel, yet we are unable to say that the language used was prejudicial to the substantial rights of appellant.

Another alleged act of misconduct of the Commonwealth's attorney is that on cross-examination of appellant the Commonwealth's attorney asked him if he did not shoot at his brother George a few days before the homicide. Objection was made to the question and sus-

588

tained to this question and the witness did not answer it. In Warman v. Commonwealth, 207 Ky. 738, 270, S. W. 48, it was held that the mere asking by the Commonwealth's attorney of one improper question did not constitute misconduct on his part nor result in prejudicial error where the court refused to permit the witness to answer such question. Very clearly the question was improper, but since it was not repeated by the Commonwealth's attorney and objections thereto sustained by the court, it results that it was not prejudicial error.

Further complaint is made that the Commonwealth's attorney in his argument to the jury misquoted the evidence of one of the witnesses. Since, however, this alleged misquotation of the evidence by the Commonwealth's attorney does not appear in the bill of exceptions or otherwise in the record except in the motion and grounds for a new trial and in brief of appellant, we are not authorized to consider it. It is a well settled rule that in order to take advantage of misconduct of the Commonwealth's attorney in his argument to the jury it must be authenticated in the bill of exceptions and signed and approved by the court or other proper court official. Alsept et al. v. Commonwealth, 240 Ky. 395, 42 S. W. (2d) 517. Many other cases might be cited but this rule is too well known to the legal profession to require citation of authority.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.