**Thomas Lee BOWLER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Oct. 28, 1977.

Joseph J. Grace and James U. Glanville, Paducah, for appellant.

Robert Stephens, Atty. Gen., Sam E. Isaacs, II, Asst. Atty. Gen., Frankfort, for appellee.

LUKOWSKY, Justice.

Bowler was convicted of murder and sentenced to twenty years in the state penitentiary by the Graves Circuit Court. He prosecutes this appeal on five assignments of error. Two of these assignments are dispositive of the appeal and require this court to reverse the conviction and to remand the case for a new trial.

Sometime between noon and 1:00 p.m. on Friday, May 7, 1976, Bowler's wife was stabbed to death in their trailer home. There were no "eyeball" witnesses. The Commonwealth's case was wholly circumstantial. The defense was alibi.

The prosecution's theory was that Bowler stabbed his wife in the bathroom, then dragged her into the hallway by the back door, and ransacked the house and arranged the victim's clothes to give the appearance of a murder-robbery-rape. The autopsy produced evidence that the victim had intercourse within the 48 hours preceding death. Bowler testified that they had not had intercourse for five days prior to her death.

The evidence tending to connect Bowler to the crime is not overwhelming. The motive propounded stemmed from marital discord, the recent acquisition of accidental death insurance on the victim, and the joint ownership of cash and real property. The opportunity consisted mainly of the Commonwealth's impeachment of the alibi witnesses and an attempt to place Bowler's car at the scene near the time of death. The means, the murder weapon, was not found.

Bowler claimed that he found his wife dead at approximately 3:40 p.m. His defense was an alibi that placed him far from the scene of the crime between approximately 9:00 a.m. and 3:40 p.m. This facet of the case presented crucial issues of credibility because both the witnesses for the Commonwealth and Bowler gave conflicting testimony and prior inconsistent statements. On the whole the record presents a close question of innocence or guilt which the jury resolved against the accused.

## I.

As part of its case in chief the Commonwealth called Bowler's teenage stepdaughter as a witness. Questions were directed to her concerning the family situation and the relationship between herself, the deceased and Bowler. On redirect examination the prosecutor asked her this question:

"At any time during your stay there with your stepfather—now you listen to this very carefully, and answer it very truthfully, I don't think I've ever asked you this at all, but you can tell me later if I have—did your stepfather ever try to molest you?"

At this point, and prior to her answering, defense counsel objected and moved the court to set aside the swearing of the jury and to declare a mistrial. The objection was sustained but the motion was denied. The court also refused defense counsel's request for an admonition to the jury upon the ground that to do so would only emphasize the question. Apparently the witness cried after this question was put to her and was thereafter released without answering. The prosecutor did not make an avowal nor did he attempt to prove the allegation insinuated in the question. It was readily apparent from the question itself that the prosecutor had no idea what the response would be.

Bowler claims that this constituted prejudicial error which deprived him of a fair and impartial trial. The circumstances in which this question was put, the nature of Commonwealth's case and the total complexion of the evidence bear upon the resolution of this issue. This girl was being questioned concerning private family matters. It was established that she and Bowler had difficulty getting along, that he separated from the victim several times prior to the murder, and that he had filed for divorce. Some of these separations were due to differences of opinion between Bowler and his wife concerning the proper upbringing and standard of conduct of this young lady. In these matters Bowler was in a particularly vulnerable position. It was the prosecutor's goal to expose all the intrafamily strife through the testimony of this girl and use it to establish a motive. Without regard for the delicate framework within which he was working, the Commonwealth Attorney asked on direct examination *for the first time* a question concerning a highly prejudicial factual predicate *without regard for the answer.*

■ Ordinarily the mere asking of an isolated improper question is not grounds for reversal. *Vontrees v. Commonwealth*, 291 Ky. 583, 165 S.W.2d 145 (1942); *Warman v. Commonwealth*, 207 Ky. 738, 270 S.W. 48 (1925). However, these cases can not be read to establish an ironclad rule.

Each determination must be made on the basis of the peculiar facts and circumstances of the particular case. This court has repeatedly held that where the Commonwealth Attorney persists in asking improper and prejudicial questions, for the purpose of getting before the jury evidence which the law does not permit them to hear, a judgment of conviction will be reversed. *Stewart v. Commonwealth,* 185 Ky. 34, 213 S.W. 185 (1919); *see, Louisville & N. R. Co. v. Rowland's Adm'r.,* 227 Ky. 841, 14 S.W.2d 174 (1929); *Louisville & N. R. Co. v. Payne,* 133 Ky. 539, 118 S.W. 352 (1909); *Cargill v. Commonwealth,* Ky., 13 S.W. 916 (1890).

 It is true that in this case, contrary to those cited above, there was no persistent improper questioning. However, there was a reckless disregard of the effect of the highly inflammatory nature of the question in the event of a negative answer, which, as far as the prosecutor knew, was as likely as a positive response. The Commonwealth contends that the question was relevant to the issue of motive. This is true only if a positive response is expected. Here, the prosecutor had no idea of the answer to the question and asked it in utter disregard of the highly prejudicial effect it might have.

The principle behind the rule of the cases cited above is that such action may so impress the minds of the jury as to amount to prejudicial error. *Louisville & N. R. Co. v. Rowland's Adm'r., supra,* 14 S.W.2d at 179. This principle applies regardless of the number of improper questions. *See, Coates v. Commonwealth,* Ky., 469 S.W.2d 346 (1971) (one question plus comment in closing argument); *Woodford v. Commonwealth,* Ky., 376 S.W.2d 526 (1964) (seven questions); *Rollyson v. Commonwealth,* Ky., 320 S.W.2d 800 (1959) (two improper questions); *Rowe v. Commonwealth,* Ky., 269 S.W.2d 247 (1954) (three questions). These cases set forth the basic rule of fairness that the prosecution cannot deliberately inject into the case, via a question, material prejudicial to the rights of the defendant without some reasonable basis to believe there will be an affirmative answer. In this case, as in *Rowe, Woodford,* and

*Coates, supra,* the prosecutor made no effort whatsoever to prove his insinuation. He was on a fishing expedition and came up empty.

This approach is not inconsistent with the application of *Rowe,* and *Woodford* in *Alexander v. Commonwealth,* Ky., 463 S.W.2d 334 (1971). In *Alexander,* the improper question was asked on cross examination, the defense objection was sustained, and the court admonished the jury to disregard the question. The court also found that the nature of the question did not introduce an element likely to inflame or to incite prejudice against the defendant and thus be likely to override the efficacy of an admonition. After viewing the question against the background of all the evidence in the case, the court was of the opinion that the prospect of its having produced substantial prejudice was too remote to justify reversal. The delicate balance of the evidence in this case and the inflammatory nature of this question compel us to hold that substantial prejudice occurred.

This question reflected a callous disregard by the Commonwealth of the rights of the accused. Whether an admonition by the court to the jury would sufficiently erase the false impression left by the question is not decided. However, no such admonition was given nor did the court reprimand the Commonwealth Attorney before the jury as an expression of its official disgust for such a highhanded tactic. The jury was left with no guidance on this matter and could have considered this aspersion on the character of the accused in its deliberations concerning the delicate issues of this case.

## II.

 One of the issues to be resolved by the jury was whether Bowler's Pinto station wagon was at the scene of the murder near the time of death. The color of the vehicle seen at the trailer that day was important. There was testimony that a small gold station wagon was in Bowler's driveway about 1:15 p.m. Conflicting testimony from various witnesses as to the color

of the car was elicited. He claimed that it was green in color and others said that it was greenish gold, changing appearance with the slant of the sun. At the conclusion of the closing arguments and as the jury was retiring to deliberate, the following exchange took place in the presence of the jury:

JUROR:

Would it be proper for us to see the Pinto in question from the window?

THE COURT:

I don't know whether it's still in existence or not. Is it, Mr. Grace?

MR. GRACE:

What's that?

THE COURT:

One of the jurors asked if it would be possible for them to see the Pinto station wagon in question. Do you have it here so that they might see it?

MR. GRACE:

No, of course we don't have it here.

MR. REED:

They don't want you to see it.

MR. GRACE:

Now, Mr. Reed, you know that's not right. The Commonwealth could have subpoenaed the car if they wanted to see it.

THE COURT:

Yes, or you could have.

MR. REED:

Defense could have brought it without it being subpoenaed.

MR. GRACE:

I don't even know whether the man's still got the car or not . . . he may have sold it.

MR. REED:

Or got rid of it.

MR. GRACE:

Now, why would he do that? I want to make a motion. I want to make a motion because of that exchange there. I want to make a motion that the swearing of this jury be set aside and that they be discharged and a mistrial declared.

THE COURT:

You are overruled.

MR. GRACE:

All right, sir, but I want that in the record.

Such irregular conduct on the part of the Commonwealth Attorney can not be tolerated. This overzealous prosecutor intentionally engaged in improper argument in the presence of the jury after the case was submitted to them. This court has defined the role of the prosecutor and the duty of his position. *Bailey v. Commonwealth*, 193 Ky. 687, 237 S.W. 415 (1922). He may strike hard blows but he may not strike foul ones. He should constantly be mindful and protective of the rights of the accused, whether guilty or innocent. He may not testify. He is limited to fair argument on matters in the record and legitimate deductions therefrom. *Martin v. Commonwealth*, 255 Ky. 529, 75 S.W.2d 13 (1934); *e.g., Baker v. Commonwealth*, 184 Ky. 207, 211 S.W. 566 (1919).

In this verbal affray the prosecutor accused the defense of deliberately concealing evidence. This charge against defense counsel and defendant is totally without support in the record. It is an unfounded and unfair inference. If this charge had been made in closing argument, it would have been improper. *Martin v. Commonwealth, supra; see, Johnson v. Commonwealth*, Ky., 302 S.W.2d 585 (1957). *State v. Swing*, Mo., 391 S.W.2d 262 (1965); *State v. Smith*, 25 Ala.App. 183, 142 So. 779 (1965). When made after submission as a parting torpedo, such an accusation is reprehensible. Even so, the trial court denied a defense motion for a mistrial and gave no admonition to the jury to disregard these accusations. In fact, its comments seemed to condone this highly irregular conduct on the part of the prosecutor.

The doctrine of harmless error is not so elastic that it will encompass the errors committed here. "When entering the temple of justice to answer for the commission of the alleged offense he was entitled to the protection of the law, and this means a fair and an impartial trial." *Cargill v. Commonwealth, supra*, 13 S.W. at 917.

The judgment is reversed and the cause is remanded for a new trial.

All concur.