# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 14, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2017-SC-000271-MR

DATE 7/6/18 Kim Redmon, DC

JOSHUA RATLIFF                          APPELLANT

V.

**ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KEN HOWARD, JUDGE
NO. 16-CR-00182**

COMMONWEALTH OF KENTUCKY            APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Joshua Ratliff, appeals from a judgment of the Hardin Circuit Court based upon jury verdicts finding him guilty but mentally ill on charges of murder, first-degree fleeing and evading, and two counts of first-degree wanton endangerment. He was sentenced to fifty-five years in prison. On appeal, he contends that the trial court erred (1) by denying his motion to be declared incompetent to stand trial, and (2) by failing to declare a mistrial when a witness for the Commonwealth mentioned Appellant was being investigated for downloading child pornography. For reasons stated below, we affirm the Hardin Circuit Court's judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was born in 1988 and, as reflected in the voluminous medical records contained in the record, he has been diagnosed as suffering from various psychological disorders throughout his life. In the summer of 2015, Appellant began working at a restaurant in Elizabethtown. Among his coworkers were Ryan Birse, Deandre Gaines, and restaurant manager Tiffany Alfaro. Appellant did not get along with Birse and had asked not to be scheduled to work with him. While working alongside Appellant, Birse and Gaines had complained to Alfaro that, in violation of company policy and applicable public health regulations, Appellant would wash dishes and then, without first washing his hands, help prepare food.

On February 25, 2016, Appellant went to the restaurant during his off-work time and entered a food preparation area that was restricted to on-duty employees. Alfaro told Appellant he had to leave, but instead of doing so, Appellant turned toward Birse and shot him several times. Gaines assisted other employees in fleeing the restaurant. Appellant followed him outside, pointed the gun at him, and pulled the trigger. The gun failed to fire, apparently because Appellant had exhausted his ammunition shooting at Birse. Appellant fled but was soon captured after a high-speed chase. Birse died on the scene.

After his indictment, Appellant filed a motion asserting that he was incompetent to stand trial. The trial court ordered an evaluation of his competency by the Kentucky Correctional Psychiatric Center (KCPC). After the

evaluation, officials at KCPC diagnosed Appellant as having bipolar disorder, type I, for which they prescribed medication. After an evidentiary hearing, the trial court found that with proper medication, Appellant was competent to stand trial.

Later, Appellant stopped taking his medications and his mental condition deteriorated. Upon motion of his counsel, the court ordered that Appellant be re-committed to KCPC, with directions for KCPC to administer his medications by force, if necessary. Following this second commitment, Appellant was diagnosed with schizoaffective disorder, but he responded well to further medication. Upon review, the trial court once again found Appellant was competent to stand trial.

At trial, Appellant presented an insanity defense. He was found guilty but mentally ill on all counts and sentenced to a total of fifty-five years in prison. This appeal followed.

## II. COMPETENCY TO STAND TRIAL

"A criminal defendant may not be tried or convicted while legally incompetent . . . ." *Gilbert v. Commonwealth*, 575 S.W.2d 455, 456 (Ky. 1978). A person is legally incompetent if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

The United States Supreme Court held in *Godinez v. Moran*, 509 U.S. 389, 396 (1993) that a defendant is competent to stand trial if he can "consult

3

with his lawyer with a reasonable degree of rational understanding" and has "a rational, as well as, factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 397-98, further explains that a competent defendant is one who can make a "reasoned choice" among the alternatives available to him when confronted with such crucial questions as whether he should testify, waive his right to a jury trial, cross-examine witnesses, or put on a defense. *Bishop v. Caudill*, 118 S.W.3d 159, 163 (Ky. 2003). "Evidence of a defendant's irrational behavior, his demeanor in court, and any prior medical opinion on competence to stand trial are all relevant facts for a court to consider" in reaching its decision. *Mills v. Commonwealth*, 996 S.W.2d 473, 486 (Ky. 1999) (citing *Drope*, 420 U.S. at 180). "Incompetency to stand trial" is defined by KRS 504.060(4) to be the "lack of capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense" due to "a mental condition."

The defendant bears the ultimate burden at a competency hearing of proving that he is incompetent to stand trial. *Jacobs v. Commonwealth*, 58 S.W.3d 435, 440 (Ky. 2001) (citing *Gabbard v. Commonwealth*, 887 S.W.2d 547, 551 (Ky. 1994)). "A competency determination is based on the preponderance of the evidence standard. We may disturb a trial court's competency determination only if the trial court's decision is clearly erroneous (*i.e.*, not supported by substantial evidence)." *Chapman v. Commonwealth*, 265 S.W.3d 156, 174 (Ky. 2007) (citations omitted); *see United States v. Branham*,

4

97 F.3d 835, 855 (6th Cir. 1996) (competency determinations are findings of fact).

In conjunction with his motions to be declared incompetent to stand trial, Appellant was twice sent to KCPC for a competency evaluation. Two evidentiary hearings were held, and extensive testimony was presented by Dr. Timothy Allen of KCPC; Appellant's parents; Appellant's forensic psychiatrist, Dr. Douglas Ruth; and a nurse from the Hardin County Detention Center, Lisa Puckett. At the conclusion of each hearing, the trial court found Appellant to be competent to stand trial. Announcing its decision from the bench after the second hearing, the trial court emphasized that it was basing its finding of competency principally upon Dr. Allen's report that Appellant was competent to stand trial:

> I give weight to Dr. Allen's testimony because, as he's indicated, KCPC and Dr. Allen are in a unique advantageous position as it relates to Joshua Ratliff in this particular case because he's now been continuously at KCPC for almost seventy-five days and has that opportunity to observe, and evaluate, and treat and discern changes in behavior and response to treatment by not only Dr. Allen but the rest of the medical staff at KCPC where he is observed twenty-four seven.

The trial court further explained its decision by noting that the evidence established that Appellant was highly functional when properly medicated, and that he became delusional only when he was not being medicated. The trial court noted that Appellant's forensic psychologist agreed with that assessment. The trial court further noted that Dr. Allen's testimony confirmed Appellant's comprehension of his legal circumstances. Dr. Allen had talked to Appellant about the case and observed that Appellant rationally discussed the relevant

5

legal issues and demonstrated an adequate knowledge of the roles of the attorneys, the judge, the jury, and of the facts of the case, including Appellant's belief that he had a good attorney.

In opposition to the trial court's ruling, Appellant contends that inadequate consideration was given to his life-long mental, emotional, and psychological problems, including depression, nervousness, anxiety, hallucinations about being injected with the HIV virus, paranoia about his medications, diminished hygiene and disrupted sleep patterns caused by mental illness, and paranoid delusions about the FBI and other government agencies he believed were out to get him. Appellant also contends that his hallucinations persist whether he is medicated or unmedicated.

Upon review of the trial court's competency determination for clear error, we note that the trial court determined twice after extensive evidentiary hearings that Appellant was competent to stand trial. The trial court had ample opportunity to observe Appellant throughout the two hearings and was not persuaded by his claim of incompetence. *See Mozee v. Commonwealth*, 769 S.W.2d 757 (Ky. 1989) (observations of a defendant during two competency hearings indicated that the defendant was able to cooperate with attorneys). Appellant's emphasis on his undisputed long-standing mental difficulties, supported by voluminous medical records presented into evidence, was powerful but not so persuasive as to compel a finding of incompetence. The contrary findings of the trial court, largely reliant upon Dr. Allen's opinions, are

6

well supported by substantial evidence and are not clearly erroneous. Accordingly, we affirm the trial court's holding on this issue.

### III. FAILURE TO DECLARE A MISTRIAL

A few months before Appellant shot and killed Ryan Birse, state police officers detected that child pornography had been downloaded onto a computer belonging to Appellant. As a result, they executed a search warrant and seized all electronic devices from Appellant's mother's residence.

In a pretrial motion, Appellant moved the trial court to prohibit any evidence or other statements at trial referencing any criminal conduct Appellant "may be suspected of for which he has not been charged, and/or of any other criminal activity other than charges that were brought in the Indictment of this case." Appellant's objective was to prevent the trial from being tainted by information relating to the child pornography issue.

The trial court denied Appellant's motion on the grounds that his psychiatric records were replete with references to child pornography, including several references within three months of the shooting. The trial court reasoned that if the trial experts on Appellant's psychiatric defense used this information in their diagnoses and in their written reports, KRE 703 and KRE 705 would allow its introduction during their testimony by way of explaining or challenging diagnoses.

However, the trial court further ordered the Commonwealth "not to reference child pornography in its opening statement . . . in its case-in-chief [or] until obtaining the court's approval." The trial court also ordered the

parties to refer to the evidence only as "illegal pornographic images" or "illegal pornography downloads," rather than "child pornography." Additionally, the court directed that if a witness referred to the images, a limiting instruction would be given to admonish the jury to consider the pornography investigation only for the purpose of understanding the expert witness's observations or report and not to consider the investigation for purposes relating to Appellant's character.

Nevertheless, during the Commonwealth's case-in-chief, the detective in charge of the investigation, Sergeant Kelly Slone, testified about her interview of Appellant soon after the shooting. A video of the interview was played for the jury. During the interview, Appellant asked Slone for a psychiatrist. On cross-examination, Slone testified that Appellant's request for a psychiatrist was "odd," and that she believed Appellant's purpose for the request was to begin laying the foundation for an insanity defense. Appellant's counsel then asked, "What does he hope to gain by doing that?" In response, Slone answered: "He had been under investigation for downloading child pornography, and I think that . . . ." Defense counsel cut-off Slone's answer with an objection and moved for a mistrial based upon the reference to Appellant having downloaded child pornography.

The trial court dismissed the jury from the courtroom and, during the subsequent discussion, asked Slone to complete the answer that was interrupted. Slone continued that it was her theory that Appellant shot Birse

8

because he was paranoid about the child pornography investigation and was in fear of going to prison as a sex offender and pedophile.

After hearing arguments, the trial court denied Appellant's motion for a mistrial. The trial court concluded that defense counsel had asked an "open-ended question," and that Slone's answer was responsive to the question she was asked. The court accordingly declined to declare a mistrial. Upon recalling the jury to the courtroom, the judge admonished the venire to disregard the last question and answer. The judge directed the jury to draw no inferences from the answer and to hold the court's ruling against neither the Commonwealth nor Appellant.

Of course, "[o]ne who asks questions which call for an answer has waived any objection to the answer if it is responsive." *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983) (citing 1 Wigmore, *Evidence*, Sec. 18 p. 344 (3rd ed. 1940); *West v. Commonwealth*, 117 S.W.2d 998 (Ky. 1938)). It is a close call, but Slone's answer to defense counsel's question was fairly regarded as responsive. Moreover, the trial court admonished the jury to disregard Slone's damaging testimony, and a jury is presumed to follow an admonition to disregard evidence. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003).

We recognize two exceptions to the presumptively curative effect of a trial judge's admonition: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the

defendant, *Alexander v. Commonwealth*, 862 S.W.2d 856, 859 (Ky. 1993),[1] and (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial," *Derossett v. Commonwealth*, 867 S.W.2d 195, 198 (Ky. 1993); *Bowler v. Commonwealth*, 558 S.W.2d 169, 171 (Ky. 1977). The second exception is not applicable here because the prejudicial comment did not arise from a question asked without a factual basis. As to the first exception, we see no overwhelming probability that the jury was unable to follow the admonition, and under the circumstances, the information was not devastating to Appellant's insanity defense.

"A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002) (internal quotation and citation omitted). We review a trial court's denial of a mistrial for abuse of discretion. *Slone v. Commonwealth*, 382 S.W.3d 851, 858 (Ky. 2012) (citation omitted). We see no abuse of discretion in the trial court's decision to address the problem by issuing a limiting admonition rather than declaring a mistrial.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Hardin Circuit Court is affirmed.

All sitting. All concur.

---

[1] Overruled on other grounds by *Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky. 1997).

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Attorney General's Office
Office of Criminal Appeals