# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  JUNE 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0084-MR

RIVAK C. KALFUS                                                                          APPELLANT

V.               ON APPEAL FROM WARREN CIRCUIT COURT
                 HONORABLE J.B. HINES, JUDGE
                 NO. 22-CR-00196

COMMONWEALTH OF KENTUCKY                                                  APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Rivak C. Kalfus appeals as a matter of right[1] from a Warren Circuit Court judgment sentencing him to four concurrent life sentences of imprisonment for two counts of rape first degree and two counts of sodomy first degree.  On appeal, Kalfus raises four issues: (1) the Commonwealth shifted the burden of proof to Kalfus by highlighting Kalfus's failure to provide a motive for the victim to lie; (2) testimony regarding Kalfus's prior incarceration denied him a fair trial; (3) impermissible bolstering of the sole witness to the crimes; and (4) cumulative error.  Finding no merit to any contention, we affirm the trial court.

## Background

In 2020, D.M. informed a counselor that between 2014 and 2016, when she was between the ages of six and eight, she had been sexually assaulted by

---

[1] KY. CONST. § 110(2)(b).

her mother's boyfriend, Kalfus. This information was passed along to law enforcement and Detective Robert Smith was assigned to determine the validity of the report. Det. Smith asked the Child Advocacy Center to interview D.M. while he observed, and he believed D.M. was telling the truth. Det. Smith proceeded to verify elements of D.M.'s story as best he could, such as confirming she attended the school she claimed and lived at the address she provided.

Det. Smith's next step was to interview Kalfus. Locating Kalfus proved difficult, but after eight months he was located in custody in Jefferson County. During the interview, Kalfus denied wrongdoing and offered other possible perpetrators, but never opined as to why D.M. would make up a story about him sexually assaulting her. Ultimately, D.M.'s insistence upon Kalfus as her assaulter convinced Det. Smith that Kalfus was the culprit.

Kalfus was arrested and indicted for two counts of first-degree rape and two counts of first-degree sodomy. At trial, the Commonwealth called only Detective Smith and D.M. To the extent the details of trial bear on this appeal, those details will be developed below. The jury found Kalfus guilty on all counts and recommended life sentences for each count to run concurrently. The trial court sentenced Kalfus in accordance with the jury's recommendation. Kalfus now appeals from this judgment.

**Analysis**

Kalfus advances three substantive arguments for reversal of his conviction: (1) the Commonwealth impermissibly shifted the burden of proof to

2

Kalfus when it stated to the jury in closing that Kalfus did not speculate as to D.M.'s motive to lie about the abuse; (2) Det. Smith's reference to Kalfus being incarcerated in Louisville constituted impermissible prior bad acts evidence; and (3) Det. Smith's discussion of his assessment of D.M.'s interview and his process for determining Kalfus had committed the alleged acts constituted impermissible bolstering of D.M.'s testimony. In the event none of these alleged errors suffices to merit reversal, Kalfus further argues the cumulative effect of any errors justifies overturning the judgment against him. We address the merits of each argument, as well as the varying standards of review, in turn.

1) The Commonwealth did not shift the burden of proof to Kalfus.

Kalfus first alleges prosecutorial misconduct as a result of a comment made during the Commonwealth's closing argument that Kalfus argues shifted the burden of proof onto him. During closing, the prosecutor made the following statement:

> So, Mr. Kalfus obviously wanted to speak to law enforcement but he never came up with any kind of motivation, any kind of reason why [D.M.] would make false statements against him. No explanation. All he did was point the finger. Well, it must have been this uncle or this person. He pointed the finger to other people but he never specifically said anything. . . . And this was his opportunity to discredit [D.M.], to say that she's lying, that she was a troublemaker, she has a problem telling the truth. We didn't hear any of that. We didn't hear any of that.

Kalfus argues the Commonwealth's highlighting of his failure to provide a motivation for D.M. to lie shifted the burden to him to prove that D.M. was not telling the truth. In a case where the testimony of D.M. was the only evidence

3

against Kalfus, Kalfus argues this statement was tantamount to requiring him to prove his innocence to the jury.

Review of a claim of prosecutorial misconduct requires two steps. First, we determine whether a prosecutor's remarks constitute misconduct. *Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010), *superseded on other grounds by statute*, KRS 503.055 and KRS 503.050(4). In the event misconduct occurred, "reversal is required where 'the misconduct is "flagrant" *or* if each of the following three conditions is satisfied: (1) Proof of defendant's guilt is not overwhelming; (2) Defense counsel objected; and (3) The trial court failed to cure the error with a sufficient admonishment to the jury.'" *Id.* (quoting *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006)). Four factors determine whether misconduct is flagrant: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)).

As to the question of burden shifting,

> Kentucky Revised Statute (KRS) 500.070 states that "[t]he Commonwealth has the burden of proving every element of the case beyond a reasonable doubt. . . ." Further, "[a]s the presumption of innocence mandates that the burden of proof and production fall on the prosecution, any burden-shifting to a defendant in a criminal trial would be unjust." *Butcher v. Commonwealth*, 96 S.W.3d 3, 10 (Ky. 2002).

*Mulazim v. Commonwealth*, 600 S.W.3d 183, 194 (Ky. 2020). In tandem with this prohibition is the wide latitude we permit in closing arguments and our

duty to examine closing arguments as a whole. *Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky. 2009).

In cases where we have found impermissible burden shifting, the prosecutor's comment spoke to the core of the Commonwealth's burden to prove a case beyond a reasonable doubt. *See Barrett v. Commonwealth*, 677 S.W.3d 326, 332-33 (Ky. 2023) (holding prosecutor's comment that "[the] presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt" and his continued reference to the loss of reasonable doubt shifted the burden of proof to the defendant). Where the Commonwealth comments on a particular failing of the defense's case, we have routinely declined to find the burden had been shifted. *See, e.g.*, *White v. Commonwealth*, 544 S.W.3d 125, 146 (Ky. 2017), *vacated on other grounds by White v. Kentucky*, 586 U.S. 1113 (2019) ("This Court has long held that a prosecutor may comment on evidence, and may comment as to the falsity of a defense position." (internal quotation marks omitted)); *Ordway v. Commonwealth*, 391 S.W.3d 762, 796 (Ky. 2013) ("The parties have wide-latitude during closing statements to argue their respective cases, to comment on the evidence and draw reasonable inferences therefrom, and to draw attention to the weaknesses in the opposing party's case.") We hold the comments made in this case to be of the permissible variety.

Kalfus implores us to consider the case against him: a delayed-report sexual assault where the only two witnesses called to testify against him were the detective and the victim. He contends that D.M.'s testimony was bare

5

bones, vague, and uncorroborated and in this context Kalfus's failure to provide a motive for D.M. to lie takes on special importance. However, Kalfus fails to consider that in light of his argument during closing, comment upon his failure to defend himself during his police interview was permissible trial strategy. Kalfus argued that D.M. concocted the abuse story as a way to streamline the process of being adopted into a new family. In other words, a central part of Kalfus's defense was that D.M. was lying. For the prosecutor's comment to point out that Kalfus at the time of his police interview failed to offer explanations why D.M. would lie—despite the detective's prodding in that direction—was a rebuttal to this line of defense. The comment thereby falls squarely into permissible closing argument.

Because we discern no misconduct as the result of the prosecutor's statement, we need not engage in the analyses set forth in *Hannah* or *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002) (adopting the Sixth Circuit's three-condition test where misconduct is objected to). Kalfus's argument on this ground does not justify reversal.

2) The detective's comment about prior incarceration was not palpable error.

Kalfus next argues reversal is warranted based on statements made by Det. Smith regarding Kalfus's incarceration in Jefferson County for a prior offense. Specifically, Det. Smith responded to the prosecutor's question, "When you found Mr. Kalfus, where was he residing?" with "He was in custody." Kalfus did not object to the statement during trial and so requests review

6

under RCr[2] 10.26.  In order to prevail on an unpreserved claim, Kalfus must show that the error is "'palpable' and 'affects the substantial rights of a party,' and even then, relief is appropriate only 'upon a determination that manifest injustice has resulted from the error.'" *Wiley v. Commonwealth*, 348 S.W.3d 570, 575 (Ky. 2010) (quoting RCr 10.26).  "An error results in manifest injustice if it 'so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable.'" *Williams v. Commonwealth*, 706 S.W.3d 177, 184 (Ky. 2024) (quoting *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017)) (third-level quotation marks omitted).  Although this testimony was given in error, we do not discern any manifest injustice in its elicitation and therefore decline to reverse on this basis.

KRE[3] 404(b) prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts" if given to "prove the character of a person in order to show action in conformity therewith."  However, such evidence may be given in two scenarios:

> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

---

[2] Kentucky Rules of Criminal Procedure.

[3] Kentucky Rules of Evidence.

KRE 404(b). In any event, the introduction of such evidence requires the Commonwealth to provide "reasonable pretrial notice to the defendant" otherwise the evidence may be excluded regardless of its admissibility under KRE 404(b). KRE 404(c); *see also Daniel v. Commonwealth*, 905 S.W.2d 76, 77 (Ky. 1995) (reversing for failure to follow the notice requirement of KRE 404(c)).

As to notice, we stress the language of KRE 404(c) regarding intent: "if the prosecution *intends* to introduce evidence" it must provide notice. (Emphasis added). The gravamen of the Commonwealth's argument on this issue is that no error occurred because the testimony was wholly inadvertent— the answer the Commonwealth sought to elicit was simply the county in which Kalfus had been residing, not his presence in the jail. The trial record bears out the Commonwealth's assertion. The prosecutor appeared taken aback by the detective's answer and quickly followed up with asking the county in which Kalfus was located, moving past the custody comment without any undue lingering. Accordingly, we have little difficulty in holding the Commonwealth did not intend to introduce the testimony and so did not run afoul of the notice requirement.

KRE 404(b), on the other hand, does not apply only to intentionally introduced evidence, but rather by its plain language applies to any evidence of other bad acts adduced at trial, accidentally or otherwise. However, we will not belabor our analysis of the comment under KRE 404(b) because it self-evidently does not fall into either of the rule's exceptions. Undoubtedly, Kalfus's prior incarceration, for what, we are not told, is not "proof of motive,

8

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" KRE 404(b)(1). The mere fact of an individual's prior incarceration says nothing that could conceivably be applied to her current offense. Similarly, we find little to suggest such a comment was "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect" to the Commonwealth. Kalfus's prior incarceration was irrelevant to the crimes with which he was charged below. The Commonwealth acknowledges as much by arguing it never intended to introduce such evidence. Because the comment cannot be fit into either of KRE 404(b) exceptions, we must conclude that it was introduced in error. However, our review of the record convinces us the comment did not amount to manifest injustice.

The comment placed in its fuller context shows why this is so. A question arose during trial about the gap in time between the interview of D.M. and when police made contact with Kalfus, a period of some eight months. On direct examination Det. Smith explained it took a long time to interview Kalfus because he could not be located. On cross-examination, Kalfus also commented on the lengthy gap between interviews, to which Det. Smith reiterated his difficulty in locating Kalfus. Finally, on re-direct the Commonwealth sought to elucidate the source of the problem—Kalfus's presence in a city roughly 120 miles from Warren County—and received an unexpected response that Kalfus was in custody. As already noted, the comment was not then elaborated upon or allowed to linger; the

9

Commonwealth immediately asked a follow-up question seeking the intended answer. Given the imminently passing nature of the comment, its ambiguity, and the Commonwealth's efforts to quickly move on, we hold the comment likely had little impact upon the case against Kalfus. Accordingly, we do not find palpable error and decline to reverse on this issue.

3) Improper bolstering.

We next address whether statements made by Det. Smith as to the truthfulness of D.M. during her interview with the Child Advocacy Center constitute improper bolstering. As with the improper KRE 404(b) evidence, this error is unpreserved and so we review for palpable error. RCr 10.26. Although we disapprove of any comment meant to induce the jury to place additional weight on the testimony of another witness—particularly where the bolstering witness is a member of law enforcement—we hold any error was either cured by the trial court's admonition or was invited by Kalfus's own questioning.

During the direct examination of Det. Smith by the Commonwealth, Det. Smith discussed his process for evaluating sexual abuse complaints. He explained that the Child Advocacy Center would conduct an interview with the child victim and he would then watch that interview. He then told the jury, "So, you know, kind of the golden rule is if we as investigators don't believe the victim, it's going to be a hard case to prove. In this case, there was no question that I believed what she said was true." Kalfus objected to the comment as improper bolstering and the trial court sustained the objection, further admonishing the jury, "there were certain statements as to the believability of

10

the alleged victim in this case that goes to credibility and not an issue or not a statement that you are to consider as evidence in this case." The Commonwealth did not again broach the topic of D.M.'s truthfulness during its examination.

During cross-examination of Det. Smith by Kalfus, Kalfus sought to have Det. Smith explain why he chose not to investigate other individuals for the abuse. Smith explained,

> [t]here was no need to. . . . [A]t no point in time was she confused as to who her attacker was. She was very confident it was Rivak Kalfus, so there was no need to follow up on two names that he gave me when she never had any other suspects that she listed. There was no question who the perpetrator was in this case.

Elaborating on his investigative method and why he believed D.M., Det. Smith stated, "[t]here was no reason for her to make these allegations towards him."

Kalfus argues to this Court that these statements improperly bolstered the credibility of the only other witness against him, D.M., and thus rendered his trial manifestly unjust. Improper bolstering is an evergreen concern in cases such as this.[4] Delayed reports of sexual abuse can rarely be corroborated by physical evidence and so the primary method by which the Commonwealth can secure a conviction becomes the testimony of a small number of witnesses. The temptation to bolster the testimony of those witnesses is easily understandable. But, as understandable as it may be, our case law does not permit one witness to "vouch for the truthfulness of another

---

[4] See our contemporaneously rendered opinion in *Boggs v. Commonwealth*, ___ S.W.3d ___ (Ky. 2025) for a more extensive look at the history of our bolstering jurisprudence and its continued disregard.

witness." *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011) (citing *Stringer v. Commonwealth*, 956 S.W.3d 883, 888 (Ky. 1997)). This rule holds true for expert and lay witness alike and applies to both direct and indirect vouching. *Id.*

In this case, we have two discreet instances of alleged bolstering, one during the Commonwealth's direct examination and one during Kalfus's cross examination. The first instance, "there was no question that I believed what she said was true," was clearly a statement meant to "vouch for the truth of the victim's out-of-court statements." *Hoff*, 394 S.W.3d at 376. The trial court also recognized the impropriety of the statement when it upheld Kalfus's objection to it and admonished the jury. "A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citing *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky. 1999)).

> There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, *Alexander* [*v. Commonwealth*, 862 S.W. 2d 856, 859 (Ky. 1993)]; or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial." *Derossett v. Commonwealth*, [] 867 S.W.2d 195, 198 ([Ky.] 1993); *Bowler v. Commonwealth*, [] 558 S.W.2d 169, 171 ([Ky.] 1977).

*Id.* Kalfus's argument as to why the admonition is infirm is unavailing. We see no reason why the jury would have been unable to set aside Det. Smith's explicit statement of faith in D.M.'s allegation. The statement was brief,

undramatic, and the objection immediate. Nothing suggests an "overwhelming probability" the jury was unable to follow the admonition. Accordingly, any error created by the statement was cured by the court's admonition.

The next instance of bolstering—statements that D.M. "was not confused", that she was "very confident" about the identity of her attacker, and that "[t]here was no reason for her to make these allegations towards [Kalfus]"—presents a closer call. As noted, indirect bolstering is also impermissible, such that a social worker's testimony that a child "sounded 'spontaneous' and 'unrehearsed' in describing sexual abuse" implied the witness believed the child was truthful and was error. *Hoff*, 394 S.W.3d at 373. The testimony of Det. Smith was of the same kind. His statements about D.M. implied that D.M. was being truthful during her interview. Her confidence and clarity were given as manifestations of the behavior of persons telling the truth and Det. Smith's belief D.M. had no reason to lie similarly implied that she was telling the truth. The statements were improper bolstering.

However, though the statements were improper, any error that arose from them was waived because they were made after prompting from Kalfus during cross-examination. "One who asks questions which call for an answer has waived any objection to the answer if it is responsive." *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983). Kalfus's questioning of Det. Smith focused in part on why Det. Smith did not investigate the other individuals put forth by Kalfus as alternative perpetrators. Kalfus suggested

13

Det. Smith had "already determined that Mr. Kalfus was the guilty party" and in response Det. Smith elaborated upon why he did not pursue other suspects, making the improper statements in the process. Perhaps Kalfus did not expect the response to his question to be quite as detailed, but certainly Det. Smith's statements were responsive to a question about his decision not to interview other suspects. Because the improper statements were responsive to a question asked by Kalfus, "[h]e cannot now complain that this testimony, which he essentially invited, amounted to palpable error." *Tackett v. Commonwealth*, 445 S.W.3d 20, 41 (Ky. 2014).

Because the first instance improper bolstering was cured by admonition and the second instance was waived, Kalfus is not entitled to reversal on this claim.

4) No cumulative error.

Finally, Kalfus alleges that in the event no single merits reversal, the cumulative effect of all the errors entitles him to a new trial. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). For this Court to find cumulative error, an appellant faces a high bar: the individual errors themselves must be "substantial, bordering, at least, on the prejudicial." *Id.* Here, we are presented with errors that either fell far short of manifest injustice or were cured or waived. None of these individual errors were substantial or bordered on the prejudicial. "[W]e have declined to hold

14

that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34, 53 (Ky. 2002)). Accordingly, we hold cumulative error does not merit reversal in this instance.

## Conclusion

For the foregoing reasons, the judgment of the Warren Circuit Court is hereby affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.


COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General